[Cite as *State v. Winningham*, 2013-Ohio-4872.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120788 |
| | | TRIAL NO. B-1005107(A) |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| LAWRENCE WINNINGHAM, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 6, 2013


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}   In one assignment of error, defendant-appellant Lawrence Winningham appeals the decision of the trial court denying his supplemental motion to suppress.  Finding no error in the decision below, we affirm.

**Facts and Procedural History**

{¶2}   In 2010, a confidential informant gave law enforcement officials information indicating that Winningham was engaged in drug trafficking.  As a result of that information, drug-enforcement officers from the Cincinnati Police Department began monitoring Winningham.  Winningham engaged in what the officers would later characterize as "a pattern of drug activity."  Winningham would travel throughout the area making frequent, short stops.  While he was unemployed, he was able to secure an apartment and pay for the utilities.  Additionally, he frequently spent time with two individuals who were known to have engaged in drug trafficking—one of whom had been a codefendant along with Winningham in a previous federal drug conviction.

{¶3}   Police obtained a search warrant in order to place a global positioning system ("GPS") monitoring device on Winningham's vehicle.  In the affidavit completed by Cincinnati police narcotics officers, they attested that they believed that Winningham was engaged in the trafficking and distribution of marijuana.  Officers referenced their confidential informant, who had proven to be reliable in the past.  The informant said that Winningham had a supplier in Chicago and that he would travel to Chicago every couple of weeks and return with several pounds of marijuana.  The informant learned that the truck that Winningham used had a hidden compartment for concealing contraband.

{¶4} The GPS device would not be active constantly, but rather would be used to occasionally determine Winningham's position. The main purpose of the device was to notify law enforcement if Winningham ever left the Cincinnati area. It would be programmed with a "fence" that roughly corresponded to the Interstate-275 loop. If the vehicle left that circle, it would send a signal.

{¶5} A warrant was issued on June 23, and the GPS tracker was installed on the vehicle two days later. By its terms, the warrant allowed for a surveillance period of 30 days. At the end of the 30-day period, law enforcement returned to renew the search warrant. Through a second affidavit in support of the renewal of the warrant, law enforcement attested that their confidential informant had learned that Winningham had been involved in a civil matter with his ex-wife during the period in question and that, as a result, he had not been able to leave the region for Chicago. The informant further indicated that the matter was resolved and that Winningham would be "traveling for a shipment of marijuana and possible heroin in the near future." The second warrant, with a similar 30-day limitation, was issued on July 23.

{¶6} On the evening of July 30, Winningham left Hamilton County and traveled to Chicago. Law enforcement officers were notified, and they monitored his progress. Winningham's vehicle traveled to a motel in the Chicago area, where it remained for six to eight hours before returning to Cincinnati. Winningham left the motel area once during that time, for a period of a few hours. The GPS device was used to follow Winningham's movement and to determine when he had returned to Ohio. Once he had returned to the state, law enforcement officers initiated a traffic stop. A drug-sniffing dog indicated that contraband was present in the bed of the truck, and marijuana was found hidden under a carpet.

{¶7}     Winningham was indicted for one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(2), and one count of possession of marijuana, in violation of R.C. 2925.11(A).  Winningham filed a motion to suppress the marijuana, claiming that the GPS installation and search were improper.  The trial court denied the motion.  After waiving his right to a jury trial, Winningham was tried before the court.  The trial court found him guilty on both counts, merged the possession count with the trafficking count, and sentenced him to eight years in prison.  We affirmed his conviction.  *State v. Winningham*, 1st Dist. Hamilton No. C-110134, 2011-Ohio-6229.  In that opinion, this court determined that law enforcement was not required to obtain a warrant prior to placing the GPS device on Winningham's vehicle as he had no reasonable expectation of privacy while traveling on public roadways.  *Id.* at ¶ 13.

{¶8}     Winningham appealed that decision to the Ohio Supreme Court.  While the case was pending, the United States Supreme Court issued a decision in *United States v. Jones*, ____U.S.____, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012).  In that case, the court determined that attaching a GPS device to a vehicle constitutes a search within the meaning of the Fourth Amendment, and that law enforcement must obtain a warrant prior to installing the unit.  *Id.* at 949-951.  In light of that decision, the Ohio Supreme Court remanded Winningham's case to the trial court for application of the *Jones* decision.  *State v. Winningham*, 132 Ohio St.3d 77, 2012-Ohio-1998, 969 N.E.2d 251.  On remand, the trial court conducted a hearing on Winningham's supplemental motion to suppress, reviewed the testimony and exhibits from the original motion, and determined that the device had been placed, maintained, and monitored, pursuant to a proper warrant.

**Stale Information, New Information, and
Probable Cause for a Warrant**

{¶9} In one assignment of error, Winningham claims that the trial court erred when it denied his supplemental motion to suppress. He first argues that, since the first anticipatory warrant expired without any triggering events having occurred, a new warrant based only on the same information contained in the original affidavit should not have been issued. We disagree.

{¶10} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution both provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Accordingly, the government is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *overruled on other grounds*, *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Likewise, it protects against trespasses to property without similar judicial safeguards. *See Jones, supra.*

{¶11} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, this court is mindful of the fact that

'[t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for * * * conclud[ing] that probable cause existed.'

5

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶12}    In *George*, the Supreme Court of Ohio set forth the standard of review to be applied in determining whether an affidavit submitted in support of a search warrant sufficiently establishes probable cause to issue the warrant.

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a [judge], neither a trial court nor an appellate court should substitute its judgment for that of the [judge] by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant.

*George* at paragraph two of the syllabus.  The court continued, "trial and appellate courts should accord great deference to the [judge's] determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶13}    The substance of Winningham's argument is that, since the second warrant was issued on the same information that was used to justify the first warrant, and since that information was more than 30 days old when the second warrant was sought, the information was stale and was not a suitable basis for the issuance of a second warrant.

{¶14}    It is true that the affidavit used to obtain the second search warrant relied on the same information that had been provided when requesting the first one. Within that information was the observation from the confidential informant that Winningham traveled to Chicago once every couple of weeks to obtain marijuana.  Had

nothing else been added to this information, the fact that a month had passed without a trip to Chicago would have seriously undermined the reliability of the informant. But the subsequent affidavit indicated that the reason that Winningham had not gone to Chicago during the preceding 30-day period was that a civil matter relating to his ex-wife had kept him in the area. It also indicated that the issue had been resolved and that Winningham would be traveling to Chicago in the near future. Therefore, new information was presented to explain the failure of the triggering event and to demonstrate that the event would occur presently. *See United States v. Spikes*, 158 F.3d 913 (6th Cir.1998) (probable cause may be found when recent information corroborates otherwise stale information).

{¶15}   Winningham argues that this explanation is "self-evidently unreliable." He gives no reason for such a bald assertion, leaving the implication in his brief that law enforcement either fabricated the explanation or knowingly used an untrue statement from their confidential informant. The Ohio Supreme Court has held that "a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980). At no point below did Winningham claim that the statement was false. And summarily making the assertion for the first time on appeal is wholly inappropriate.

### Crim.R. 41 and The Exclusionary Rule

{¶16}   Winningham's second argument in support of his assignment of error is an attack on the propriety of the warrants under Crim.R. 41. He notes that Crim.R. 41(C) requires that a search authorized by a warrant must be completed within three days of the issuance of the warrant. In this case, the warrants' 30-day timeframes, he argues, rendered them structurally defective under the rule. Further, the delay between

the issuance of the second warrant and the actual search of the vehicle rendered its implementation a violation of the rule. Therefore, he concludes, the proper remedy was to suppress the fruit of the search. We disagree.

{¶17} The exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), "will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." *Kettering v. Hollen*, 64 Ohio St.2d 232, 235, 416 N.E.2d 598 (1980). The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

{¶18} A "fundamental" violation of Crim.R. 41 requires automatic suppression. *State v. Wilmoth*, 22 Ohio St.3d 251, 263, 490 N.E.2d 1236 (1986), citing *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980). But a violation is "fundamental" only when it essentially renders the search unconstitutional under traditional Fourth Amendment standards. *Id.* Violations of the rule which do not rise to the level of constitutional error are classified as "non-fundamental." *Id.* A rule violation that is "non-fundamental" requires suppression only when either "there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed," or there was evidence of an intentional and deliberate disregard of the provisions of the rule. *Id.*

{¶19} We find that neither the placement of the GPS device on the vehicle nor its search upon its return to Ohio were fundamental violations of Crim.R. 41 requiring suppression. While the issuance of the warrants might appear to be a technical violation of Crim.R. 41, the rule was not drafted in contemplation of such a situation. At this

time, there exists no provision in the Rules of Criminal Procedure that contemplates the type of warrant required by the *Jones* decision. The rule's three-day requirement makes sense in the context of seeking a warrant searching for specific evidence—i.e. a cache of contraband in a specific location. The concrete nature of the items sought and their mobility necessitate relatively quick action. But the rule's very limited time restrictions are less appropriate when law enforcement is seeking to monitor an individual's movement as he engages in a pattern of behavior indicative of a criminal enterprise.

{¶20} We are mindful of the fact that law enforcement in this case began their investigation with weeks of "traditional" police work: talking to informants, observation of the subject, and gathering other information. After compiling information about Winningham's operation, they presented this information to a judge who reviewed it. That judge determined that the police should be allowed to continue their investigation because they had demonstrated that there was probable cause to believe that Winningham would soon travel to Chicago and return with a large quantity of marijuana. The judge did not give them an open-ended license to monitor Winningham, but allowed such an investigation to continue for 30 days. At the end of that period, the police were required to return to the judge and demonstrate why additional time should be allowed. And all of this occurred before the question of whether a warrant was even required had been answered by the courts. In light of this, we conclude that any violation of Crim.R. 41 was neither "prejudicial" nor intentional and deliberate.

{¶21} Additionally, the actual search of the vehicle was not such that this court must order the marijuana suppressed. In this regard, we agree with the dicta in *State v. Ward*, 1st Dist. Hamilton No. C-040379, 2005-Ohio-3036. In that case, Ward had driven to Miami, Florida and was returning to Hamilton County with cocaine. Law enforcement personnel had placed a GPS device on his vehicle so that they would be

alerted when it left the area. While the police had obtained a second warrant to search the vehicle upon its return, this court noted that such a warrant was likely unnecessary:

> In this case, for all the same reasons that the officer listed in his affidavit to obtain the warrant, the police had probable cause to believe that the van contained drugs or evidence relating to drugs—the hidden compartment, the coffee grounds, and the great number of miles traveled in a short time all pointed in that direction. And because of the global positioning device, the officers knew that the van had just driven all the way to Miami, stopped for only eight and a half hours, and then come back. * * * They therefore had the right to stop and search the van without a warrant.

*Id.* at ¶ 32 and 34.

{¶22} In the same way, law enforcement in this case had sufficient probable cause to stop Winningham's vehicle even without a warrant. The information that he made trips to Chicago to obtain marijuana, the information about the secret compartment where the marijuana was stored, his activities and associations that indicated that he was engaged in drug trafficking, and the fact that he had gone to Chicago, stayed no more than eight hours, and returned immediately, all combined to give the police a reasonable, articulable suspicion that Winningham had marijuana in his truck. Therefore, we cannot say that the search of the vehicle violated Crim.R. 41 in a way that was either prejudicial to Winningham or demonstrated an intentional and deliberate disregard of the provisions of the rule.

**Conclusion**

{¶23}   The search warrants issued in this case were issued with sufficient probable cause, and any violation of Crim.R. 41 did not rise to a level that would require this court to order the marijuana seized from Winningham's vehicle to be suppressed. We therefore overrule Winningham's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**HILDEBRANDT, P.J.**, concurs.
**DEWINE, J.**, concurs separately.

**DEWINE, J.**, concurring separately.

{¶24}   I concur fully in the majority's opinion that probable cause existed for the issuance of the second search warrant.   I write separately because I analyze the question of whether there was a violation of Crim.R. 41  differently than the majority.

{¶25}   The warrant at issue purported to authorize two things (1) the installation of the GPS tracking device, (2) and the search of the vehicle for marijuana and other related materials.   Crim.R. 41 provides that a warrant issued under the rule "shall command the officer to search, within three days, the person or place named for the property specified."

{¶26}   Here, there is no question that the GPS device was installed within the three days required by Crim.R. 41.

{¶27}   One might argue that maintaining the GPS device on the vehicle and gathering information from the GPS device for more than three days violated Crim.R. 41.  But there is nothing in present Crim.R. 41 that contemplates application to a GPS tracking device, and the warrant itself specifically authorized the use of the device for 30

days.[1] Thus, I would hold that as to the GPS device, the time requirement of Crim.R. 41 was complied with when the device was installed within the three-day period. As I see it, that is the only reasonable reading of the rule.

{¶28} It is true that the search of the vehicle upon its return to the jurisdiction came some eight days after the issuance of the second search warrant. But as the majority points out, the police had sufficient probable cause to search the vehicle even without a warrant. As we noted in our previous decision in this case, the officers had a "reasonable and articulable suspicion" justifying the stop of the vehicle under the Fourth Amendment once the GPS device alerted them that the vehicle had left the Interstate-275 loop and traveled to Chicago. *State v. Winningham*, 1st Dist. Hamilton No. C-110134, 2011-Ohio-6229, ¶ 21 ("*Winningham I*"). After Winningham had been lawfully stopped, a drug-sniffing dog alerted the officers to the likely presence of drugs in the vehicle. This alert together with the other evidence the police had obtained provided probable cause for a search of the vehicle.[2] *See id.* at ¶ 22-23.

{¶29} Thus, in my view the placement and monitoring of the GPS device on Mr. Winningham's vehicle did not violate Crim.R. 41. There is no need to consider the application of Crim.R. 41 to the subsequent search of the vehicle because a warrant was not required for the search.

---

[1] It is worth noting that the Ohio Supreme Court is currently seeking public comment on a proposed amendment to Crim.R. 41 which would make specific provision for the issuance of a "tracking device warrant." Under the proposed amendment, such a warrant would need to be executed within ten days and specify the time that the device may be used, not to exceed 45 days.

[2] The Ohio Supreme Court vacated our decision in *Winningham I* for application of the United States Supreme Court's decision in *United States v. Jones*, ___U.S.___, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). While the *Jones* case requires that we rethink our determination in *Winningham I* that no warrant was required for the installation of the GPS device, nothing in that case calls into question our decision that no warrant was required for the search of Winningham's vehicle upon his return to the jurisdiction.

Please note:

> The court has recorded its own entry on the date of the release of this opinion.

