[Cite as *State v. Schmidt*, 2015-Ohio-146.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 13CA010499 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GREGORY D. SCHMIDT | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. 12CR084583 |

DECISION AND JOURNAL ENTRY

Dated: January 20, 2015

HENSAL, Judge.

{¶1} Appellant, the State of Ohio, appeals a judgment of the Lorain County Court of Common Pleas that granted Appellee, Gregory D. Schmidt's, motion in limine and motion to suppress. For the following reasons, this Court reverses.

I.

{¶2} On February 1, 2012, Mr. Schmidt was arrested by the North Ridgeville Police. He submitted to a breath-alcohol test using an Intoxilyzer 8000, which measured his alcohol concentration at .097. Mr. Schmidt was later indicted by the Grand Jury for one count each of: (1) operating a vehicle under the influence of alcohol and/or a drug of abuse in violation of Revised Code Section 4511.19(A)(1)(a), a felony of the fourth degree; (2) operating a vehicle under the influence of alcohol and/or a drug of abuse in violation of Revised Code Section 4511.19(A)(1)(d), a felony of the fourth degree; and (3) failure to reinstate a license in violation of Revised Code Section 4510.21(A), a misdemeanor of the first degree.

{¶3} Mr. Schmidt filed a motion in limine seeking to preclude the State from introducing evidence of the test results. The trial court scheduled the motion for a "suppression" and "*Daubert*" hearing, which was continued multiple times. Mr. Schmidt filed a separate motion to suppress on various grounds, including that the specific Intoxilyzer 8000 used in his test was faulty. The trial court subsequently scheduled a "suppression/*[D]aubert*" hearing that was also continued multiple times.

{¶4} When the hearing occurred, the prosecution stated on the record prior to the taking of testimony that the hearing was "more or less" a *Daubert* hearing, but that it was "assuming that [the] *Daubert* and the motion to suppress will end up at some point * * * going hand in hand" if the court were to exclude the Intoxilyzer 8000 results. Both the trial judge and Mr. Schmidt's attorney agreed with the State's recitation of its understanding as to the purpose of the hearing. The trial court then held an evidentiary hearing that focused solely on the reliability and efficacy of the Intoxilyzer 8000. The State objected to the court holding the hearing and did not participate either through direct or cross-examination. The court granted both the motion in limine and motion to suppress after concluding that the Intoxilyzer 8000 does not produce scientifically valid and reliable results. The State appealed arguing that the court erred in granting the motions.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY GRANTING MR. SCHMIDT'S MOTION IN LIMINE/TO SUPPRESS HIS INTOXILYLZER 8000 BREATH TEST RESULTS.

{¶5} The State argues that the trial court erred in granting Mr. Schmidt's motions because the Ohio Supreme Court holding in *State v. Vega*, 12 Ohio St.3d 185 (1984), prohibits a

challenge to the general reliability and validity of a breath alcohol testing device that is approved by the Ohio director of health. It further argues that the trial court erred by utilizing the analysis set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to find that the Intoxilyzer 8000 is not a scientifically reliable testing device. We agree.

{¶6}   Mr. Schmidt moved for an order precluding the State from proffering evidence of his Intoxilyzer 8000 results because it would be unable to call a witness who could offer expert testimony that was satisfactory under either the requirements of Evidence Rule 702 or the standard set forth in *Daubert*. He argued in his motion that the State should be required to satisfy Rule 702 prior to admission of any test results because "[i]t is widely known that the Department of Health has the ability to change the results of the breath testing device at issue in [his] case" and the specific machine used in his test produced numerous errors that suggested it was unreliable. The State opposed the motion arguing that the Ohio Supreme Court's holding in *Vega* and Revised Code Section 4511.19 prohibited Mr. Schmidt from challenging the general admissibility of his test results if the test was appropriately administered.

{¶7}   Mr. Schmidt's subsequent motion to suppress reiterated this same argument. He further argued in his motion to suppress that he was "not making a general attack on the theories and scientific procedures at use for the Intoxilyzer 8000, rather the defense is making a very specific attack on a machine that very clearly does not appear to work." According to Mr. Schmidt, because he alleges that his specific test results were unreliable, the State should be required to establish that the Intoxilyzer 8000 itself is reliable under the standards set forth in Evidence Rule 702 and *Daubert*. In support of his argument, he maintained that the machine produced two fatal errors that required that it be taken out of service until the Department of Health could assess its functionality. He further argued that his test was not conducted in

4

accordance with applicable regulations as a dry gas control was not administered before and after the test.

## Motion in Limine

{¶8} "A motion in limine is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury." *State v. Grubb*, 28 Ohio St.3d 199, 201, quoting *State v. Spahr*, 47 Ohio App.2d 221, 224 (2d Dist.1976). In most cases, an order granting a motion in limine is interlocutory. *Id.* The Ohio Supreme Court has held, however, that

> [a]ny motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such a motion is a final order and may be appealed * * *.

*State v. Davidson*. 17 Ohio St.3d 132 (1985), syllabus. Accordingly, as a preliminary matter, this Court concludes that the trial court's decision granting Mr. Schmidt's motion in limine was a final appealable order.

{¶9} Rule 702 provides that a witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the results

of procedure, test, or experience, the testimony is reliable only if all of the following apply:

(1)     The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2)     The design of the procedure, test, or experiment reliably implements the theory;

(3)  The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

"The qualification and reliability requirements of Evid.R. 702 are distinct. Because even a qualified expert is capable of rendering scientifically unreliable testimony, it is imperative for a trial court, as gatekeeper, to examine the principles and methodology that underlie an expert's opinion." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 17.

"In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611 (1998), citing *Daubert* at 593-594. "A trial court's role in determining whether an expert's testimony is admissible under Evid.R. 702(C) focuses on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." *Miller* at paragraph one of the syllabus.

{¶10} Revised Code Section 4511.19(D)(1)(b) provides that the court "may" admit evidence of a breath-alcohol test that is "analyzed in accordance with methods approved by the director of health * * * pursuant to section 3701.143 of the Revised Code." Revised Code Section 3701.143 vests the director of health with the responsibility to determine techniques or methods for chemically analyzing a person's breath alcohol level. Pursuant to that section, the

director "shall approve satisfactory techniques or methods * * * to perform such analyses." R.C. 3701.143. The Intoxilyzer 8000 is approved by the director of health as an "evidential breath testing instrument[ ] for use in determining whether a person's breath contains a concentration of alcohol prohibited * * * by section [ ] 4511.19 * * * of the Revised Code[.]" Ohio Adm.Code 3701-53-02(A)(3).

{¶11} The Ohio Supreme Court has held that Section 4511.19 creates a rebuttable presumption that the defendant was under the influence of alcohol if the test concludes that the person had a prohibited concentration of alcohol in his system. *Vega*, 12 Ohio St.3d. at 187. The *Vega* court recognized that, while the defendant may not challenge the general reliability of breath-alcohol testing machines, such as the Intoxilyzer 8000, "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure * * *." *Id*. at 189. *See also State v. Ilg*, 141 Ohio St.3d 22, 2014-Ohio-4258, syllabus ("The approval of a breath-analyzer machine * * * does not preclude an accused from challenging the accuracy, competence, admissibility, relevance, authenticity, or credibility of specific test results or whether the specific machine used * * * operated properly at the time of the test."). The court further stated that any expert testimony that the defense presented at trial pertaining to the specific test in question, would go to its weight as evidence rather than its admissibility. *Vega* at 189.

{¶12} In *State v. Schwarz*, 9th Dist. Medina No. 02CA0042-M, 2003-Ohio-1294, this Court refused to disregard the *Vega* decision and adopt the defendant's argument that the *Vega* holding violated his constitutional rights. *Id*. at ¶ 10. We recognized that the legislative presumption created in Revised Code Section 4511.19 "resolved the questions of reliability and relevancy of intoxilyzer tests, even though some experts disagree." *Id*. at ¶ 8, citing *Vega* at 188.

{¶13} Several of our sister districts have recently concluded that it is not necessary to determine the general reliability of the Intoxilyzer 8000 under *Daubert* and Evidence Rule 702 given the legislative mandate established by Section 4511.19(D)(1)(b) and the *Vega* holding. *See State v. Zanni*, 4th Dist. Ross No. 13CA3392, 2014-Ohio-2806, ¶ 19; *State v. Smith*, 11th Dist. Portage No. 2012-P-0076, 2013-Ohio-640, ¶ 24. *See also State v. Luke*, 10th Dist. Franklin No. 05AP-371, 2006-Ohio-2306, ¶ 24-25 (concerning results from BAC Datamaster). *See also Ilg*, 2014-Ohio-4258 at ¶ 23 ("Because the legislature provided for the admissibility of Intoxilyzer tests if analyzed in accordance with methods approved by the director of [the Ohio Department of Health], an accused may not present expert testimony attacking the general scientific reliability of approved test instruments.").

{¶14} Mr. Schmidt argues that the trial court is permitted to evaluate the reliability of scientific evidence, such as Intoxilyzer 8000 results, since it is the "gatekeeper" of the admissibility of such evidence under *Daubert* and Revised Code Section 4511.19(D)(1)(b). He points to the statute's use of the permissive word "may" as evidence that the trial court is vested with discretion to admit breath-alcohol results. *See* R.C. 4511.19(D)(1)(b). He further argues that the *Vega* holding permits a specific attack on the general reliability of the particular machine used in his case. Mr. Schmidt urges us to adopt the reasoning of the Eleventh District and employ a burden-shifting analysis to examine a specific challenge to the general reliability of a breath-testing device. Under such an analysis, he argues, the State failed to meet its reciprocal burden to demonstrate that the Intoxilyzer 8000 is scientifically reliable as a breath-alcohol testing device.

{¶15} In support of his motion in limine, Mr. Schmidt offered the testimony of his expert, Dr. Albert E. Staubus, who set forth numerous reasons why, in his opinion, the

Intoxilyzer 8000 is not a reliable and valid breath-testing device despite its approval by the director of health. Dr. Staubus was the sole witness at the hearing. His testimony largely concerned the alleged flaws and unreliability of the Intoxilyzer 8000 in general with the exception of a discussion as to the supposed impact of the volume of Mr. Schmidt's breath sample in elevating his breath-alcohol concentration. He opined that the larger the volume of the breath sample provided, the higher the resulting breath-alcohol concentration.

{¶16} In its order granting Mr. Schmidt's motions in limine and to suppress, the trial court made general findings about the validity and reliability of the Intoxilyzer 8000 that were not specific to Mr. Schmidt's test results or the machine used in his case. It found that, "[t]o admit the results of the Intoxilyzer 8000 into the evidence at trial * * * to prove a *per se* violation of R.C. 4511.19, given what is known about the instrument through scientific study and testing, would violate *Daubert* and its progeny, Evid.R.702, and * * * the right of the accused to * * * due process." The trial court further found that, specifically in Mr. Schmidt's case, the Intoxilyzer 8000's results were invalid and unreliable because the device should not render different results based on the volume of the sample provided.

{¶17} After a careful review of the record, this Court concludes that to the extent that the trial court purported to grant Mr. Schmidt's motion in limine, it erred given that Mr. Schmidt impermissibly challenged the general reliability of the Intoxilyzer 8000. As the Ohio Supreme Court recognized in *Miller*, an analysis under Evidence Rule 702 focuses on the reliability of the principles and methods used to reach the opinion. *See Miller*, 80 Ohio St.3d 607 at paragraph one of the syllabus. The trial court's decision utilized Rule 702 and the standards set forth in *Daubert* to conclude that Mr. Schmidt's test results should be excluded as evidence. Because the inherent focus under such an analysis is on the foundational science that forms the basis of the

expert's opinion, Mr. Schmidt's attack concerned the scientific principles behind the Intoxilyzer 8000 machine.

{¶18} Given the Ohio Supreme Court's holding in *Vega* and *Ilg*, the legislature's creation of a statutory presumption of reliability, and this Court's precedent, we conclude that the trial court erred in granting Mr. Schmidt's motion in limine by applying Evidence Rule 702 and the *Daubert* standards.

**Motion to Suppress**

{¶19} This Court notes that the trial court's judgment granted not only Mr. Schmidt's motion in limine, but also his motion to suppress.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶20} Mr. Schmidt's motion to suppress was not addressed at the *Daubert/*motion in limine hearing. In his motion to suppress, Mr. Schmidt challenged, inter alia, the propriety of the stop and arrest, whether the field sobriety tests were administered in substantial compliance with the testing standards, whether his specific breath sample was taken in compliance with the OAC, the absence of standards for the issuance of an operator access card in the regulations as required by Section 3701.143, and whether the statements by Mr. Schmidt were taken in violation of his constitutional rights. Despite the fact that there was no hearing directed to the issues raised by the motion to suppress, the trial court's judgment grants the motion to suppress. Additionally, it fails to clarify which evidence is actually suppressed. Under these circumstances, this Court

must reverse the trial court's decision granting the motion to suppress and remand the matter for the trial court to determine whether a hearing specifically on the motion to suppress is warranted, and, if nothing else, to set forth the basis for its decision to grant the motion to suppress and to specify the evidence suppressed. We make no determination, therefore, as to whether the trial court erred in granting Mr. Schmidt's motion to suppress as the issue is not yet ripe for our review.

## III.

{¶21} The State's assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellant.

JOSEPH C. PATITUCE and CATHERINE R. MEEHAN, Attorneys at Law, for Appellee.