[Cite as *State v. Glaze*, 2020-Ohio-53.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 18CA011289 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| MATTHEW GLAZE | | COURT OF COMMON PLEAS |
| | | COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 16CR095318 |

DECISION AND JOURNAL ENTRY

Dated: January 13, 2020

CARR, Presiding Judge.

{¶1} Appellant, Matthew Glaze, appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} The unfortunate circumstances of this case arise out of a traffic accident that occurred in Amherst Township on the morning of July 2, 2016. As Glaze was entering an intersection while driving his Chevy Suburban, he struck a Chevy Cruze containing three women. The Chevy Cruze then collided with a van stopped at the intersection. Two passengers in the Chevy Cruze died as a result of the accident. The driver of the Chevy Cruze and the driver of the van suffered injuries.

{¶3} On December 8, 2016, the Lorain County Grand Jury returned a 13-count indictment against Glaze. Glaze was charged with four counts of aggravated vehicular homicide, one count of aggravated vehicular assault, one count of vehicular assault, one count of tampering

with evidence, two counts of possession of drugs, one count of driving under suspension, two counts of driving under the influence, and one count of possession of drug paraphernalia. On February 17, 2017, the grand jury returned a supplemental indictment charging Glaze with two additional counts of vehicular assault. Thereafter, the grand jury again supplemented the indictment with one count of aggravated vehicular assault as well as another count of vehicular assault. Glaze pleaded not guilty to the charges at arraignment.

{¶4} The matter proceeded to a jury trial where Glaze was found guilty of all the charges against him. After determining that a number of the counts were allied offenses, the trial court imposed a total prison sentence of 14 years.

{¶5} On appeal, Glaze raises five assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

### ASSIGNMENT OF ERROR II

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶6} In his first assignment of error, Glaze contends the State failed to present sufficient evidence to sustain his convictions for aggravated vehicular homicide. In his second assignment of error, Glaze contends that his convictions for aggravated vehicular homicide were against the weight of the evidence. This Court disagrees with both assertions.

{¶7}     Glaze was convicted of two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), which states, "[n]o person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of [R.C. 4511.19(A)]."  Glaze was also convicted of two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), which provides that, "[n]o person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * [r]ecklessly[.]"  Pursuant to R.C. 2901.22(C), a person acts "recklessly" when "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature.   A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

Sufficiency Challenge

{¶8}     Glaze challenges his convictions for aggravated vehicular homicide to the extent that the State failed to present sufficient evidence that he acted recklessly.[1]

{¶9}     When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.  *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is

---

[1] At sentencing, the trial court determined that Glaze's convictions under R.C. 2903.06(A)(2)(a) (counts four and five) merged with his convictions under R.C. 2903.06(A)(1)(a) (counts one and two).

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶10} At trial, the State presented evidence supporting the following narrative. On the morning of July 2, 2016, Glaze was involved in a car accident at the intersection of State Route 113 and State Route 58 in Amherst Township. Glaze was driving a Chevy Suburban when he drove into the back of a Chevy Cruze that was stopped at the intersection. The Chevy Cruze contained three women. L.V. was driving the sedan while I.C. and M.M. were passengers. After being struck from behind by the Suburban, the Chevy Cruze collided with a van driven by R.T. I.C. and M.M. died as a result of the accident. L.V. and R.T. sustained injuries.

{¶11} Ryon Berkel observed Glaze driving westbound on State Route 113 just prior to the accident. As Berkel was preparing to exit his driveway, he saw Glaze approaching at a high rate of speed. Berkel testified that Glaze's vehicle was "going left of center as it was approaching me. That's what made me hesitate." Berkel further testified that in addition to veering outside of his lane, Glaze was "hauling ass[,]" traveling at an estimated speed of 70-75 miles per hour on road with a speed limit of 55 miles per hour.[2] Berkel observed that Glaze was not in a normal driving position. Instead, Glaze had a "slouched look" and "was up on top of the wheel." Berkel saw "parts flying everywhere" when Glaze collided with another vehicle as he entered the intersection of State Route 113 and State Route 58. Berkel could not recall seeing the Suburban's brake lights prior to the crash.

---

[2] Berkel testified that his ability to gauge a vehicle's "rate of closure" was informed by his experience as a Division III driver in the National Hot Rod Association, where he races quick rod and super rod.

{¶12} Stephen Konkiel, who drives a truck for Hillandale Farms, was travelling southbound of State Route 58 on the morning of the incident. At the time of the collision, Konkiel was stopped at a red light as cars traveled from east to west on State Route 113. Konkiel's eyes were drawn to the van travelling westbound on State Route 113 that was stopped in the left hand turn lane. Konkiel noticed the van, driven by R.T, because it had a "rainbow flame" paint job. The Chevy Cruze, driven by L.V., was stopped behind the van. Out of the corner of his eye, Konkiel saw Glaze's Suburban coming at a very high rate of speed. The Suburban crashed into the rear of L.V.'s car. Konkiel described the accident as a "violent impact" that "sounded like an explosion going off." The collision propelled the Chevy Cruze into the van. Konkiel explained that the van ended up in the middle of the intersection while the Suburban went through the intersection and off the road. R.T. saw the Suburban's brake lights come on after it came to a stop in a field, suggesting that the brakes were functional. Both Konkiel and R.T. testified that they saw Glaze exit his Suburban after the accident and throw an object into the bushes.

{¶13} In recalling the incident, L.V. testified that she pulled into the left turn lane on State Route 113 as she prepared to turn onto State Route 58. There was a red light and L.V. came to a complete stop behind the van driven by R.T. L.V. did not remember the details of the accident, only that she was laughing with her friends before she suddenly "saw black." When L.V. was taken to an ambulance at the scene, she observed the damage to the back end of her vehicle and passed out.

{¶14} First responders arrived on the scene immediately after the accident. Konkiel notified Officer Matthew Gramlich that Glaze had thrown something into the bushes. Thereafter, law enforcement discovered a pipe in that area that tested positive for cocaine.

Officer Gramlich found an empty pill bottle with Glaze's name on it in the grass near Glaze's vehicle. The prescription was for oxycodone. Upon approaching Glaze, Officer Gramlich noticed that Glaze had constricted pupils. Testing on the pill bottle indicated that it contained heroin residue. While Glaze was initially alert, he gradually became sluggish and started to "nod off" while answering questions. A paramedic at the scene also noticed that Glaze's pupils were constricted and that his eyes did not respond to light or motion. Based on their observations of Glaze, both Officer Gramlich and the paramedic suspected that Glaze was under the influence of drugs.

{¶15} Glaze was transported to the hospital where urine and blood samples were collected. Dr. Gabrielle Morris, a neurological surgeon, examined Glaze in the emergency room. Glaze's urine tested positive for cocaine, opiates, and benzodiazepines. The blood tests were negative for illegal substances. Dr. Morris concluded that Glaze had a "polypharmacy induced altered mental state" based on the urine test results. While Dr. Morris did diagnose Glaze with a concussion, she emphasized that, "in the setting of a positive tox screen and a negative CT [scan,]" Glaze's altered mental state could only have been caused by polypharmacy, not a concussion. The State's toxicology expert, Dr. John Wyman, testified that a euphoric high from cocaine lasts for a relatively short period of time. The period of euphoria can be followed by a period of dysphoria where the user experiences a crash, characterized by discomfort, fatigue, and agitation. Dr. Wyman noted that the blood sample in this case was collected two and a half hours after the accident. Dr. Wyman testified cocaine will only appear in the blood samples for a short period of time before the body metabolizes the substance and turns it into benzoylecgonine, which would appear in a urine sample for a longer period of time.

{¶16} Lieutenant Robert Gable, who serves as a drug recognition expert for the Ohio State Highway Patrol, evaluated Glaze at the hospital. Glaze told Lieutenant Gable that his brakes failed as he approached the intersection. When Glaze struggled with certain field sobriety tests,[3] Lieutenant Gable inquired as to why Glaze might be giving signs of impairment. Glaze indicated that he ingested Xanax and Lithium prior to going to bed at 1:30 am. Upon further interrogation, Glaze "admitted that that morning, prior to the crash, he was arguing with his wife and that he may have taken one oxycodone, one Xanax, and one Lithium around 6:30 in the morning."

{¶17} The crux of Glaze's argument on appeal is that the State failed to demonstrate that he acted recklessly because there was no evidence that he was under the influence at the time of the incident. Glaze emphasizes that while his blood test showed no signs of drugs, his urine tested positive for cocaine. Glaze contends that "[i]t is clear that any ingested cocaine was already through the blood, metabolized, and in the urine[,]" meaning that "[t]here [was] no reckless conduct because there was no intoxication as the drug was in the metabolized waste form." Glaze further points to his own medical history, noting that he has dealt with syncope and that he has a prescription to take opiates.

{¶18} Glaze's sufficiency challenge is without merit. We remain mindful that we must construe the evidence in favor of the State when resolving a sufficiency challenge. *Jenks*, 61 Ohio St.3d at 279. The State presented evidence that, at the time of the deadly collision, Glaze was driving a Suburban at an excessive rate of speed and was weaving in and out of his lane.

---

[3] While Glaze performed well on the horizontal and vertical gaze nystagmus tests, Lieutenant Gable had to continually remind Glaze to keep his eyes open during those tests. Glaze gave clues of impairment on certain divided attention skills tests, including the walk-and-turn test and the one-leg-stand test.

There was further evidence that Glaze was slouched over the wheel as he sped toward the intersection where, without braking, he plowed into a car stopped at the light and killed two people. Upon exiting the vehicle, he attempted to discard a pipe with cocaine residue by throwing it into some nearby bushes. Law enforcement also found a pill bottle containing heroin residue near Glaze's vehicle. Both law enforcement and emergency personnel were suspicious that Glaze was under the influence. Glaze's urine sample tested positive for a number of drugs, including cocaine and opioids. Dr. Wyman testified that after experiencing a high, cocaine users can experience a period of dysphoria that includes a number of negative physical symptoms. Multiple witnesses observed Glaze in an altered mental state after the accident and Dr. Morris testified that the altered mental state could not have been a result of a concussion, but instead was the result of polypharmacy. The aforementioned evidence, when construed in the light most favorable to the State, demonstrated that Glaze acted recklessly in causing the deaths of I.C. and M.M.

{¶19} The first assignment of error is overruled.

Manifest Weight Challenge

{¶20} Glaze's manifest weight challenge also focuses on whether he acted recklessly. Glaze renews his position that his "body had already metabolized the cocaine and the State's own expert testified that once the cocaine is metabolized, the high would be gone." Glaze further argues that he suffered a concussion during the crash, which could explain the symptoms he displayed as well as his poor performance on field sobriety tests. Finally, Glaze emphasizes that he suffers from a number of medical conditions, including syncopal episodes, which law enforcement would not have been qualified to detect immediately following the accident.

{¶21} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶22} Glaze's manifest weight challenge is without merit. Glaze correctly notes that the State's toxicology expert, Dr. Wyman, testified that once someone's body metabolizes cocaine, the euphoric high is gone. However, Dr. Wyman further testified that the period of euphoria can be followed by a period of "dysphoria and depression[.]" Dr. Wyman indicated that based upon his review of the reports in this matter, it appeared Glaze was behaving in a manner consistent with opioid impairment after the crash. Moreover, while Glaze contends that his altered mental state may have been due to a concussion, Dr. Morris concluded that his altered mental state was due to polypharmacy. Dr. Morris specifically observed that while Glaze had a concussion, "[h]e did not have any brain injury that required admission, observation, or any further care." Though Glaze further contends that law enforcement was not qualified to understand his various medical ailments, including syncopal episodes, the State presented ample evidence, independent of the

observations of law enforcement, that Glaze was impaired at the time of the accident. Under these circumstances, we cannot say that this is the exceptional case where the jury clearly lost its way.

Conclusion

**{¶23}** As Glaze's convictions for aggravated vehicular homicide were supported by sufficient evidence and were not against the weight of the evidence, Glaze's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN HOLDING THE STATE COULD PRESENT EXPERT TESTIMONY AT TRIAL OF THE DYSPHORIC AFFECTS OF COCAINE AS IT RELATES TO ACCIDENTS BECAUSE THE EVIDENCE IS UNRELIABLE.

**{¶24}** In his third assignment of error, Glaze contends that the trial court erred in permitting Dr. Wyman to testify because the State failed to demonstrate that his testimony regarding the dysphoric effects of cocaine was reliable. Glaze maintains that the trial court's analysis fell short of the reliability standard set forth in Evid.R. 702(C) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This Court disagrees.

**{¶25}** This Court reviews the admission of expert testimony for an abuse of discretion. *Wade v. Mancuso*, 9th Dist. Lorain No. 16CA010978, 2018-Ohio-1563, ¶ 37. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶26}** Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶27} "In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." *State v. Schmidt*, 9th Dist. Lorain No. 13CA010499, 2015-Ohio-146, ¶ 9, quoting *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611 (1998), citing *Daubert* at 593-594. "A trial court's role in determining whether an expert's testimony is admissible under Evid.R. 702(C) focuses on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." *Miller* at paragraph one of the syllabus.

{¶28} After the State gave notice of its intent to call Dr. Wyman as an expert witness, Glaze filed a request for a *Daubert* hearing to establish the reliability of Dr. Wyman's testimony. The matter proceeded to a hearing.

{¶29} At the outset of the hearing, the trial court noted that the scope would be "the limited issue of dysphoria with cocaine." Dr. Wyman testified that he has a doctoral degree in

toxicology and comparative pharmacology as well as a bachelor's and master's degrees in microbiology. Dr. Wyman is also board certified in general toxicology and forensic toxicology. With respect to this case, Dr. Wyman prepared a report after reviewing the State Highway Patrol's lab report, crash report, and investigative report, as well as the report from the drug recognition expert. Dr. Wyman also reviewed witness statements and Glaze's hospital records. Dr. Wyman acknowledged that he had to prepare an amended report, or a second report, due to the fact that he mistook the urine test results for the blood test results and initially concluded that Glaze must have been "repeatedly dosing[,]" or binging, on cocaine. Upon recognizing the issue, Dr. Wyman prepared a corrected report.

{¶30} In addition to opining that Glaze was under the influence of opioids at the time he was driving, Dr. Wyman inferred that Glaze may have been experiencing dysphoria related to his cocaine use. This inference was based on the fact that while there was evidence that Glaze had used cocaine, the cocaine was no longer present in Glaze's blood. Dr. Wyman explained that "when you've used cocaine, initially you have euphoria, but after it's metabolized it reverts to a state of dysphoria." In elaborating, Dr. Wyman explained that, as a central nervous system stimulant, cocaine causes neurotransmitters to be released into the body resulting in effects that last for a relatively brief period of time. When the body metabolizes the cocaine and it leaves the blood, the user will experience dysphoria, or a "crash[.]" In a state of dysphoria, the user is "extremely uncomfortable[]" and can experience fatigue, drowsiness, paranoia, and anxiousness. Based on the reports he reviewed, Dr. Wyman concluded that Glaze may have been suffering from dysphoria associated with cocaine use and that Glaze was likely impaired at the time of the accident due to opioid exposure.

{¶31} Dr. Wyman explained that toxicologists are aware of the notion of dysphoria associated with cocaine and that it has been the subject of scientifically peer-reviewed articles. In the middle of the hearing, the trial court inquired as to whether Dr. Wyman would be testifying with respect to the results of tests he conducted in specific regard to Glaze. The State indicated that Dr. Wyman did not perform any tests and that other witnesses would be testifying regarding the results of toxicology tests. The State indicated that Dr. Wyman's testimony would serve solely to educate the jury regarding the dysphoric effects of cocaine. Dr. Wyman testified that his understanding of dysphoria as a result of cocaine elimination stemmed from his education, experience, and training, as well as scientific literature. Dr. Wyman referenced an article written by Daniel Isenschmid, Ph.D., that detailed the negative effects of dysphoria and how it can lead to impaired driving. Dr. Wyman noted that Isenschmid's article referenced other scientific papers on the subject and was published in the Forensic Science Review, a highly regarded toxicology journal. Dr. Wyman further testified that he was not aware of any criticisms or addendums to the article's findings in the years that followed its publication in 2002.

{¶32} Following the hearing, the trial court issued a journal entry noting that the stipulated purpose of the hearing was to determine if Dr. Wyman's testimony regarding the dysphoric effects of cocaine was reliable. The trial court ultimately concluded that the "dysphoria associated with cocaine use is well known and accepted in the scientific community" and that Dr. Wyman's testimony was based on reliable scientific, technical, and specialized information.

{¶33} On appeal, Glaze contends that the trial court's analysis failed to meet the reliability standard set forth in *Daubert* and Evid.R. 702(C) and, instead, appeared to be rooted in the lesser "general accepted" standard set forth in *Frye v. United States*, 293 F. 1013

(D.C.Cir.1923). Glaze emphasizes that Dr. Wyman never conducted any tests himself and never examined Glaze. Glaze further argues that the reliability of Dr. Wyman's testimony was undermined when he had to prepare a second report because his first report was based on a mistaken understanding of the blood and urine test results.

{¶34} To the extent that Glaze contends that the trial court disregarded the *Daubert* standards, "the test of scientific reliability is a flexible one, and the factors outlined in *Daubert* 'neither necessarily nor exclusively app[ly] to all experts or in every case.'" *State v. Jackson*, 9th Dist. Summit Nos. 27132, 27200, 27133, 27158, 2015-Ohio-5246, ¶ 74, quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). A trial court has "considerable leeway" in determining how to evaluate the reliability of an expert's testimony. *Jackson* at ¶ 74, quoting *Kumho Tire Co., Ltd.* at 152.

{¶35} In this case, the trial court pressed the State on the requirements of Evid.R. 702 and participated in the examination of Dr. Wyman. The State acknowledged that Dr. Wyman did not perform any testing on Glaze and that his testimony would be limited to the dysphoric effects of cocaine. Dr. Wyman testified that in addition to his training and education, his opinion regarding the dysphoric effects of cocaine was based on scientific literature that had been peer reviewed. Dr. Wyman further testified that he was not aware that any findings in the Isenschmid article had been disputed in the years since its publication. Moreover, though Glaze notes that it was necessary for Dr. Wyman to prepare a second report, Dr. Wyman acknowledged the mistake in his initial report and noted that his testimony with respect to Glaze would be predicated on the corrected report. Under these circumstances, Glaze cannot prevail on his argument that the State failed to demonstrate that Dr. Wyman's testimony was reliable.

{¶36} The third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE COURT ABUSED ITS DISCRETION BY SENTENCING APPELLANT TO TWO CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929.14.

{¶37} In his fourth assignment of error, Glaze contends that the trial court abused its discretion in sentencing him to consecutive sentences. This Court disagrees.

{¶38} Glaze's argument focuses on the first three counts in the indictment. With respect to count one, Glaze was convicted of aggravated vehicular homicide in relation to the death of M.M. and sentenced to a mandatory term of six years in prison. As to count two, Glaze was convicted of aggravated vehicular homicide in relation to the death of I.C. and sentenced to a mandatory term of six years in prison. In regard to count three, Glaze was convicted of aggravated vehicular assault in relation to L.V. and sentenced to a mandatory term of two years in prison. The trial court ordered that the sentences for count one, count two, and count three were to be served consecutively for a total prison sentence of 14 years.

{¶39} R.C. 2929.14(C)(4) provides that "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" The court must also find "any" of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the

offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c)

{¶40} The Supreme Court of Ohio in *State v. Bonnell* held that, "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, at syllabus.

{¶41} Glaze does not dispute that the trial court made a finding under R.C. 2929.14(C)(4)(b) in support of its decision to impose consecutive sentences. Instead, Glaze contends that his conduct was not more egregious, and thus did not warrant consecutive sentences, simply because there were multiple passengers in the Chevy Cruze that he struck. Glaze maintains that if there had only been one occupant of the Chevy Cruze, "[his] behavior would be the same but he would have only had one sentence."

{¶42} "As long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Kilmire*, 9th Dist. Summit Nos. 27319, 27320, 2015-Ohio-665, ¶ 16, quoting *Bonnell* at ¶ 29.

{¶43} Given the record before us, we can only conclude that Glaze's argument is without merit. "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing[; h]owever, a word-for-word recitation of the language of the statute is not required[.]" *Id*. Here, the trial court made findings pursuant to R.C.

2929.14(C)(4)(b) at the sentencing hearing in support of its decision to impose consecutive sentences. The trial court further incorporated these findings into its sentencing entry. While Glaze maintains that his sentence would have been different if L.V. had not had passengers in her vehicle on the date of the incident, the unfortunate facts of this case are that Glaze's conduct resulted in two people losing their lives and a third person suffering serious injuries. Glaze has not pointed this Court to any authority indicating that a trial court errs by imposing consecutive sentences when a defendant causes a collision that injures or kills multiple passengers in the same vehicle. This Court's own research reveals otherwise. *See, e.g.*, *State v. Lambert*, 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837, ¶ 34; *State v. Owens*, 6th Dist. Lucas No. L-15-1215, 2016-Ohio-3092, ¶ 34; *State v. Long*, 12th Dist. Fayette No. CA2000-09-022, 2001 WL 433371, *2-3 (Apr. 30, 2001). Under these circumstances, the record supports the trial court's decision to impose consecutive sentences.

{¶44} The fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY IMPOSING, CONTRARY TO LAW AND THE CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENTS, WHICH ARE DISPROPORTIONATE WITH THE SENTENCES IMPOSED ON SIMILAR DEFENDANTS.

{¶45} In his fifth assignment of error, Glaze contends that the length of his sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. Glaze points to two other defendants who were recently sentenced for aggravated vehicle homicide in the Lorain County Court of Common Pleas and maintains that the sentence he received was grossly disproportionate to the sentences handed down in those cases. This Court disagrees.

{¶46} The Supreme Court of Ohio has held that, "[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to cruel and unusual punishment."

*McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964). Here, Glaze has neither demonstrated that any of his individual sentences fell outside the accepted statutory range, nor has he shown that the trial court failed to comply with statutory provisions in ordering those sentences be served consecutively. Moreover, a review of the record reveals that Glaze did not raise the constitutionality issue and present comparators below. Accordingly, he has forfeited the issue on appeal. *See generally State v. White*, 9th Dist. Lorain No. 94CA005936, 1995 WL 338423, *5 (June 7, 1995). It follows that Glaze's final assignment of error is overruled.

III.

{¶47} Glaze's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.