[Cite as *State v. Simpson*, 2023-Ohio-3207.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 1-22-79

    v.

CHRISTINE A. SIMPSON,                 O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2021 0406

Judgment Affirmed

Date of Decision: September 11, 2023

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**MILLER, P.J.**

{¶1} Defendant-appellant, Christine A. Simpson ("Simpson"), appeals the decision of the Allen County Court of Common Pleas denying her motion to suppress blood test results. Simpson also appeals that court's December 1, 2022 judgment of sentence. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} On October 17, 2021, Simpson was driving at a high rate of speed the wrong way on a one-way street. Her vehicle collided with another vehicle at the intersection of Union and North Streets in Lima, Allen County, Ohio. The other vehicle, which had four occupants, slid onto its side after being struck by Simpson's vehicle. All four of the occupants in the other vehicle sustained injuries. This included the front passenger, who sustained a severe injury to her head that required portions of her ear to be removed, her head to be stitched and stapled, and the drilling of posts and studs into her skull to support a prosthetic ear. That victim was later diagnosed with a traumatic brain injury, wears a prosthetic ear, and has difficulty hearing. Another passenger suffered a concussion and a major skull fracture.

{¶3} On the same day as the collision, a judge of the Allen County Court of Common Pleas issued a search warrant based on an affidavit submitted by one of the investigating officers. Among other things, the search warrant stated that

Case No. 1-22-79

Simpson was in the custody of the Lima Police Department at St. Rita's Medical

Center and that on her property or person:

> THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY Whole Blood, Blood Serum, Blood Plasma or Urine, containing what is believed to be a prohibited amount of Alcohol, and possibly other drugs, in violation of the State of Ohio's OVI statute, and per se legal limit for the metabolites of the above referenced drugs.
>
> WHICH ARE EVIDENCE OF THE CRIME OF OPERATION WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUG OF ABUSE (ORC 4511.19A1a) and AGGRAVATED VEHICULAR ASSAULT (ORC 2903.08a1A)
>
> * * *
>
> YOU ARE HEREBY COMMANDED TO SEARCH FORTHWITH THE PERSON NAMED FOR THE PROPERTY SPECIFIED, SERVING THIS WARRANT AND MAKING THE SEARCH AT ANY TIME IN THE DAYTIME OR NIGHT, THE COURT FINDING THAT REASONABLE CAUSE HAS BEEN SHOWN AUTHORIZING THE EXECUTION OF THIS SEARCH WARRANT AT TIMES OTHER THAN DAYTIME, AND IF THE PROPERTY BE FOUND THERE TO SEIZE IT, LEAVING A COPY OF THIS WARRANT AND A RECEIPT FOR THE PROPERTY TAKEN, AND PREPARE A WRITTEN INVENTORY OF THE PROPERTY SEIZED AND RETURN THIS WARRANT AND BRING THE PROPERTY BEFORE ME WITHIN THREE (3) DAYS OF THIS DATE, AS REQUIRED BY LAW.

{¶4} An Inventory and Receipt for Property Seized by Search Warrant, dated

October 17, 2021, indicated that two vials of blood were taken from Simpson.  The

blood was tested, and the toxicology report indicated it had a blood alcohol content

of 0.12%.

**{¶5}** On December 15, 2021, the Allen County Grand Jury indicted Simpson on four counts: three counts of operating a vehicle while under the influence of alcohol ("OVI"), pursuant to R.C. 4511.19, and one count of aggravated vehicular assault, pursuant to R.C. 2903.08(A)(1)(a) & (B)(1). On January 13, 2022, a superseding indictment charged Simpson with seven counts: three counts of OVI, pursuant to R.C. 4511.19, and four counts of aggravated vehicular assault, pursuant to R.C. 2903.08(A)(1)(a) & (B)(1). On December 20, 2021 and again on February 11, 2022, Simpson entered a written plea of not guilty to the original indictment and superseding indictment, respectively.

**{¶6}** On January 5, 2022, Simpson filed a motion to suppress the blood testing results. In support of her motion, Simpson argued that the testing was done without a warrant and/or was beyond the warrant's authorization. More specifically, she argued that, despite a command in the warrant that the blood be brought before the common pleas judge within three days, it appeared that the police department sent the blood to the toxicology lab for testing and did not bring the blood to the judge.

**{¶7}** On March 9, 2022, following a hearing, the trial court denied Simpson's motion to suppress. The trial court concluded that the ability to test the blood was implicit in the warrant. Additionally, the trial court concluded that "the command that the seized evidence be returned to the court in accordance with the law,

specifically allows for law enforcement to retain this evidence and have it tested if needs be." (Mar. 9, 2022 Judgment Entry at 5). The trial court also said that "[r]eading the warrant along with the applicable law reveals that the command is to serve the warrant and prepare an inventory and receipt indicating what property was taken within three days." (*Id.* at 4).

{¶8} On October 20, 2022, Simpson entered pleas of No Contest to two of the four counts of aggravated vehicular assault, preserving her right to appeal the suppression denial. Each of the two counts Simpson pleaded to concerned one of the two victims whose injuries are specifically mentioned above. The other counts were dismissed pursuant to the plea negotiations.

{¶9} On November 30, 2022, the trial court held a sentencing hearing. The judge sentenced Simpson to consecutive mandatory terms of 60 months of imprisonment for one count and 36 months of imprisonment for the other count. This resulted in an aggregate imprisonment term of 96 months (eight years). The next day, the trial court filed its Judgment Entry of Sentencing. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶10} On December 27, 2022, Simpson timely filed a notice of appeal. She raises the following two assignments of error for our review:

## First Assignment of Error

**The Trial Court erred in denying the defense motion to suppress the fruits of an unlawful search of Defendant's blood.**

## Second Assignment of Error

**The Trial Court erred in sentencing Ms. Simpson to consecutive sentences.**

## III. DISCUSSION

### A. First Assignment of Error

{¶11} In her first assignment of error, Simpson contends that, "[b]ecause law enforcement did not deliver the blood to the judge within three days and did not secure additional authorization for transfer of custody of that blood and then testing/searching of the blood itself, the testing of the blood exceeded the scope of the warrant and was thus warrantless." (Appellant's Brief at 5). Therefore, according to Simpson, "the denial of her motion to suppress violated her rights guaranteed to her both by the Ohio Constitution and the United States Constitution." (*Id.*). She asserts the trial court erroneously denied her motion to suppress and asks that we reverse that decision with instruction to suppress the blood test results.

#### i. Standard of Review for a Motion to Suppress

{¶12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of

fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* *See State v. Carter*, 72 Ohio St.3d 545, 552, 651 N.E.2d 965 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

### ii. Applicable Law

{¶13} "The provisions of Section 14, Article I of the Ohio Constitution are essentially the same" as the Fourth Amendment to the United States Constitution. *State v. Davis*, 56 Ohio St.2d 51, 56, 381 N.E.2d 641 (1978), fn. 4; *see also State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. Both constitutional provisions prohibit unreasonable searches and seizures, and they have the essential purpose to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *State v. Eads*, 2020-Ohio-2805, 154 N.E.3d 538, ¶ 10 (1st Dist.). Specifically, the Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fourth Amendment to the U.S. Constitution. The Ohio Constitution states: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized." Ohio Constitution, Article I, Section 14.

### iii.  Analysis Regarding the Blood Testing

{¶14} Initially, it is important to understand what Simpson is challenging and what she is not. Simpson does not argue that the affidavit submitted by law enforcement in support of the warrant failed to establish probable cause that Simpson committed an OVI offense. She also does not argue that the judge erred in finding probable cause existed to issue the search warrant, including its command to search Simpson and seize her blood. Additionally, she does not argue that there was any error in the actual blood tests or their results. She does not assert the blood testing procedures were unreasonable. Instead, she argues "the warrant authorized *seizure* of the blood but did not specifically authorize *search* of the blood," *i.e.*, testing the blood for the presence of alcohol. (Emphasis sic.) (Appellant's Brief at 5).

{¶15} We disagree with Simpson's argument. The trial court did not commit error by denying Simpson's motion to suppress the blood testing results. Courts from around the country have examined this issue in similar cases and have reached the same conclusion we do. In fact, caselaw cited by Simpson in support of her position consists solely of a state of Washington intermediate appellate court opinion that she acknowledges was reversed by the Washington Supreme Court on this particular issue. In that case, the Washington Supreme Court explained that the warrant authorized extraction of a blood sample from the defendant, "indicating probable cause existed to believe his blood contained evidence of DUI." *State v. Martines*, 184 Wash.2d 83, 93, 355 P.3d 1111 (Wash.2015). The court continued:

> The purpose of the warrant was to draw a sample of blood from [defendant] to obtain evidence of DUI. It is not sensible to read the warrant in a way that stops short of obtaining that evidence. *A warrant authorizing a blood draw necessarily authorizes blood testing, consistent with and confined to the finding of probable cause.* The only way for the State to obtain evidence of DUI from a blood sample is to test the blood sample for intoxicants.

(Emphasis added.) *Id.*

{¶16} Other cases support this result too. A federal appeals court addressed a defendant's argument that, although extraction of his blood was permissible, the subsequent testing of his blood was improper. *United States v. Snyder*, 852 F.2d 471, 473 (9th Cir.1988). The appeals court rejected the argument, explaining that "[t]he flaw in [defendant's] argument is his attempt to divide his arrest, and the

subsequent extraction and testing of his blood, into too many separate incidents, each to be given independent significance for fourth amendment purposes." *Id.* "The only justification for the seizure of defendant's blood was the need to obtain evidence of alcohol content." *Id.* at 474. "The right to seize the blood" encompassed "the right to conduct a blood-alcohol test at some later time." *Id.* The appeals court concluded that the trial court correctly denied the defendant's motion to suppress the blood test results. *Id.*; *see also State v. Frescoln*, 911 N.W.2d 450, 455-56 (Iowa App.2017) (holding that, "[a]lthough the warrant does not explicitly state that the blood sample would be subject to chemical testing, the stated reason for obtaining the blood sample was its relevance to an [operating while intoxicated] OWI investigation," and "a commonsense reading of the warrant implies the blood sample would be subjected to chemical testing").

{¶17} We agree with these courts and "apply a commonsense reading to the warrant," which leads us to "conclude it authorized not merely the drawing and storing of a blood sample but also the toxicology tests performed to detect the presence of drugs or alcohol." *Martines*, 18 Wash.2d at 93; *see also State v. Maniaci*, 2017-Ohio-8270, 87 N.E.3d 236, ¶ 25 (3d Dist.) (warrants and their supporting documents are to be read in a commonsense fashion, not hypertechnically). Simpson does not provide any legal authority to support a different interpretation under the Ohio Constitution, and we do not find a different

interpretation is justified. *See generally State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 14 ("R.C. 4511.19(A)(2) contains references to R.C. 4511.191, Ohio's implied-consent statute. As part of obtaining the privilege to drive in Ohio, a driver implicitly consents to a search, through means of a chemical test, to determine the amount of intoxicating substances in the driver's body upon the driver's arrest for DUI"); *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 22 (a defendant has no reasonable expectation of privacy in the scientific analysis of her DNA profile extracted from a lawfully obtained DNA sample). The search warrant here, issued to search Simpson for her blood and seize it based on probable cause that she committed an OVI offense, permitted testing the collected blood for alcohol or drugs.

### iv. Analysis Regarding the Command to Bring the Blood to the Judge

{¶18} The last paragraph of the search warrant reads, in relevant part:

YOU ARE HEREBY COMMANDED TO SEARCH FORTHWITH THE PERSON NAMED FOR THE PROPERTY SPECIFIED [NAMELY, BLOOD] * * * AND IF THE PROPERTY BE FOUND THERE TO SEIZE IT, LEAVING A COPY OF THIS WARRANT AND A RECEIPT FOR THE PROPERTY TAKEN, AND PREPARE A WRITTEN INVENTORY OF THE PROPERTY SEIZED AND RETURN THIS WARRANT AND BRING THE PROPERTY BEFORE ME WITHIN THREE (3) DAYS OF THIS DATE, AS REQUIRED BY THE LAW.

{¶19} Simpson complains law enforcement did not deliver the blood to the judge within three days, as directed by the warrant. To us, it appears that the "bring

the property before me within three (3) days of this date" language was antiquated language that amounted to nothing more than surplusage in the search warrant. Without speculating on the origin of this language in the search warrant, we note that R.C. 2933.26 requires that, "[w]hen a warrant is executed by the seizure of property or things described therein, such property or things shall be kept by the judge, clerk, or magistrate to be used as evidence." However, this statute has been superseded by Crim.R. 41(D)(1), which states in relevant part: "[p]roperty seized under a warrant shall be kept for use as evidence by the court which issued the warrant *or by the law enforcement agency which executed the warrant*." (Emphasis added.) Crim.R. 41(D)(1); *see also Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 2 ("[p]rocedural rules promulgated pursuant to the Modern Courts Amendment supersede conflicting statutes that affect procedural matters * * *"). It would make little sense to bring blood to the trial court judge.[1] As the trial court judge stated:

> As a practical matter these days, most courts in Ohio do not have secure evidence rooms that would accommodate the incredibly large numbers of items seized during the execution of search warrants nor do courts have the type of equipment necessary to properly preserve

---

[1] To the extent that the language was included in error, "[t]he United States Supreme Court has made clear that technical defects in a warrant do not call for or permit exclusion of what the search produces." *State v. Ridenour*, 4th Dist. Meigs No. 09CA13, 2010-Ohio-3373, ¶ 21 (internal quotation marks omitted); *see also State v. Moore*, 2d Dist. Montgomery No. 28640, 2021-Ohio-1114, ¶ 35, 44 (rejecting defendant-appellant's argument that the search warrant authorizing law enforcement to obtain his blood sample "as soon as possible (within 3 hours of operation of vehicle)" was illegally executed because the blood sample was taken five hours after he operated his vehicle; "strict compliance with the three-hour time frame in the search warrant would have made it impossible to execute the warrant since the warrant was signed … approximately four and a half hours after the automobile accident").

> biological evidence, particularly blood. Thus, law enforcement agencies, including those in Allen County, are expected to keep these items for the court.

(Mar. 9, 2022 Judgment Entry at 4-5).

**{¶20}** Regardless, the basis for Simpson's appeal is a violation of her rights under the Ohio Constitution and United States Constitution, and we do not find a constitutional violation here. *State v. Ridenour*, 4th Dist. Meigs No. 09CA13, 2010-Ohio-3373, ¶ 29, 33 (affirming denial of a motion to suppress where "the state's noncompliance with Crim.R. 41 did not violate [defendant-appellant's] Fourth Amendment rights"). Simpson does not challenge issuance of the warrant (*e.g.*, that there was no probable cause) or the reasonableness of the search of her person and the seizure of her blood. Instead, her challenge relates to law enforcement's failure to comply with a portion of the warrant's text (even if inclusion of that text makes little practical sense). Yet, that particular challenge does not address constitutional issues. As set forth above, the Ohio Constitution and U.S. Constitution prohibit unreasonable searches and seizures. *Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, at ¶ 15. They do not mandate that property be returned to a judge, let alone mandate a time to return such property to a judge. In fact, neither does Criminal Rule 41 mandate that property be returned to a judge within three days. Crim.R. 41.

**{¶21}** "The exclusionary rule applies to constitutional violations, not statutory ones" or ones that involve procedures set forth in a particular warrant regarding the time and place to bring seized property.[2] *State v. Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, 211 N.E.3d 1174, ¶ 3; *see also Ridenour* at ¶ 29, 33; *State v. Winningham*, 2013-Ohio-4872, 1 N.E.3d 501, ¶ 16-19 (1st Dist.) (where the warrant included a 30-day timeframe to conduct the search instead of the three-day time frame set forth in Crim. R. 41, the violation did not rise to the level of constitutional error and, therefore, the recovered property did not need to be suppressed; "the exclusionary rule … will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights") (internal quotation marks omitted).

**{¶22}** Simpson's first assignment of error is overruled.

**B.  Second Assignment of Error**

**{¶23}** In her second assignment of error, regarding sentencing, Simpson takes issue only with the trial court's "course of conduct" finding, made pursuant to R.C. 2929.14(C)(4)(b).  She contends the trial court erred in finding that the two offenses of aggravated vehicular assault were committed as part of a "course of conduct" and, therefore, consecutive sentencing was improper.

---

[2] Even though we find no constitutional violation in this case, it may behoove law enforcement and prosecutors to review their standard warrant language to eliminate any antiquated verbiage and ensure compliance with Crim.R. 41.

### i. Standard of Review for Consecutive Sentencing

{¶24} An appellate court deciding an appeal based on felony sentencing "shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under [R.C. 2953.08] or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.* However, the appellate court may take such action only "if it clearly and convincingly finds" either (a) in cases where the sentencing court made findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), R.C. 2929.14(C)(4), or R.C. 2929.20(I), that the record does not support the sentencing court's findings under that statutory subsection; or (b) "[t]hat the sentence is otherwise contrary to law." *Id.*

{¶25} Thus, an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Clear and convincing evidence is the measure or degree of proof that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It requires more than a preponderance

of the evidence, but less than the extent of proof beyond a reasonable doubt required for conviction in criminal cases.[3] *Id.*

### ii. Applicable Law

**{¶26}** When a person is sentenced to imprisonment for having committed multiple offenses, the presumption is that those sentences will be imposed concurrently, not consecutively. R.C. 2929.41(A). However, R.C. 2929.14(C) provides an exception:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

---

[3] If we were to apply the standards from the Ohio Supreme Court's relatively recent opinion in *State v. Gwynne*, 2022-Ohio-4607 (issued on December 23, 2022 in case number 2021-1033), then the result of this particular appeal would be the same: overruling the second assignment of error. However, a motion for reconsideration was filed in *Gwynne* on January 3, 2023, and that motion is still pending as of the date of our opinion in this case.

> (c)   The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶27}** Thus, R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before it may impose consecutive sentences. *Id.*; *see also State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 36-37. First, the court must find "that the consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Second, the court must find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Third, the court must find at least one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*

**{¶28}** Additionally, in order to impose consecutive terms of imprisonment, "a trial court must state the required findings [from R.C. 2929.14(C)(4)] at the sentencing hearing" and also "incorporate the statutory findings into the sentencing entry." *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *Bonnell* at ¶ 29. However, the trial court "has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37. "Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

### iii. Analysis

**{¶29}** At the sentencing hearing, the trial judge found that the two counts of aggravated vehicular assault did not merge because they involved separate victims. (Nov. 30, 2022 Tr. at 41). One count involved the front passenger victim who suffered serious head injuries, while the other count related to the victim who suffered a concussion and a major skull fracture. (*Id.* at 16, 22-23, 26, 41, 46-47). In accordance with R.C. 2929.14(C)(4), the trial judge then found that "consecutive service is necessary to protect the public from future crime" and "to punish the offender," as well as that "consecutive sentences are not disproportionate to the seriousness of [Simpson's] conduct and to the danger she poses to the public." (*Id.* at 47). Finally, in accordance with R.C. 2929.14(C)(4)(b), the trial judge also found that at least two of the multiple offenses were committed as part of one or more courses of conduct and that the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of her conduct. (*Id.*). The trial judge incorporated those findings into the judgment entry of sentencing. (Dec. 1, 2022 Judgment Entry at 2, 4).

**{¶30}** Simpson concedes that "[s]he caused very serious harm to two young adults" because of her "driving drunk" while "driving the wrong way on a one-way street, speeding excessively while doing so, and running into an intersection without

any recognition of what she was doing." (Appellant's Brief at 12; *see also* Presentence Investigation Report; Nov. 30, 2022 Tr. at 39-40). However, according to Simpson, the "course of conduct" finding was erroneous because "[t]he act causing both injuries was the same, instantaneous," and "a single act cannot logically form the entirety of a 'course of conduct.'" (Appellant's Brief at 12). Simpson asserts that consecutive sentences require consecutive bad acts, not a single bad act with multiple victims. She further contends that "the record clearly and convincingly does not support the consecutive-sentence findings," so we "should modify the sentence to concurrent sentencing" in accordance with R.C. 2953.08(G)(2)(a).

{¶31} The phrase "course of conduct" is not defined in R.C. 2929.14. However, other cases have explained its meaning. In a case very similar to this one, the Second District Court of Appeals explained that, in order to find two offenses were part of a single course of conduct, a trial court must discern some connection, common scheme, pattern, or psychological thread that ties the offenses together. *State v. Lambert*, 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837, ¶ 33. "A course of conduct may be established by factual links such as time, location, weapon," similar motivation, or cause of death or injury, for example. *Id.*; *see also State v. Summers*, 2d Dist. Champaign No. 2013 CA 16, 2014-Ohio-2441, ¶ 14-15.

**{¶32}** Here, there were "multiple offenses": two counts of aggravated vehicular assault, each relating to a different victim. And, these two offenses were committed as part of one course of conduct with ties connecting the two offenses together. These included factual links such as time, location, and cause of injury—in addition to Simpson driving drunk, traveling at a high rate of speed, and driving the wrong way on a one-way street when crashing into the other vehicle. *Lambert* at ¶ 33. Therefore, we conclude that the record supports the trial court's finding that "multiple offenses were committed as part of one or more courses of conduct," in accordance with R.C. 2929.14(C)(4)(b).

**{¶33}** Additionally, caselaw supports this result. For example, in *Lambert*, the appellate court affirmed consecutive prison terms for one count of aggravated vehicular homicide and one count of aggravated vehicular assault, with each count relating to a different victim. *Lambert* at ¶ 2-3, 33-34. Both of those offenses arose from a collision in which "one victim died and another was severely injured as a consequence of [defendant-appellant's] actions in disregarding traffic regulations while operating a vehicle without a valid license and when under the influence of alcohol." *Id.*; *see also State v. Mayberry*, 2014-Ohio-4706, 22 N.E.3d 222, ¶ 31-32 (2d Dist.) (affirming consecutive sentencing for aggravated vehicular homicide and aggravated vehicular assault caused by the defendant, who ran a red light while driving with a suspended license and impaired by marijuana, colliding with another

vehicle, killing its driver and paralyzing its passenger). In another case, the defendant-appellant made an argument similar to Simpson's argument: "if there had only been one occupant of the" vehicle that he struck (while driving at an excessive rate of speed and under the influence of drugs), then his "behavior would be the same but he would have only had one sentence." *State v. Glaze*, 9th Dist. Lorain No. 18CA011289, 2020-Ohio-53, ¶ 2, 11, 15, 18, 41. The appellate court rejected that argument, explaining:

> While [defendant-appellant] maintains that his sentence would have been different if L.V. had not had passengers in her vehicle on the date of the incident, the unfortunate facts of this case are that [defendant-appellant's] conduct resulted in two people losing their lives and a third person suffering serious injuries. [Defendant-appellant] has not pointed this Court to any authority indicating that a trial court errs by imposing consecutive sentences when a defendant causes a collision that injures or kills multiple passengers in the same vehicle. This Court's own research reveals otherwise. *See, e.g.*, *State v. Lambert,* 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837, ¶ 34; *State v. Owens*, 6th Dist. Lucas No. L-15-1215, 2016-Ohio-3092, ¶ 34; *State v. Long*, 12th Dist. Fayette No. CA2000-09-022, 2001 WL 433371, *2-3 (Apr. 30, 2001). Under these circumstances, the record supports the trial court's decision to impose consecutive sentences.

*Id.* at ¶ 43.

{¶34} Therefore, the trial court did not err in sentencing Simpson to consecutive sentences, including that it did not err in finding a "course of conduct" under R.C. 2929.14(C)(4)(b). The trial court stated the required findings from R.C. 2929.14(C)(4) at the sentencing hearing and incorporated the statutory findings into the sentencing entry. (Nov. 30, 2020 Tr. at 40-47; Dec. 1, 2022 Judgment Entry).

We do not "clearly and convincingly" find either that the sentencing court's findings under R.C. 2929.14(C)(4) are unsupported by the record or "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

## IV. CONCLUSION

**{¶35}** For the foregoing reasons, Simpson's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

*Judgment Affirmed*

**ZIMMERMAN and POWELL, J.J., concur.**

**\*\* Judge Stephen W. Powell of the Twelfth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

**/jlr**