[Cite as *State v. Bates*, 2024-Ohio-2587.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :               No. 113454

v.                                      :

ERNEST BATES,                           :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** July 3, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683897-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lisa J. Turoso, Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Schlachet and Levy and Eric M. Levy, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Ernest Bates, appeals his convictions after he pled guilty to one count of domestic violence and one count of intimidation of a crime victim or witness. He contends that the trial court erred in accepting his guilty

pleas because he did not expressly withdraw his previously entered not guilty pleas prior to entering his guilty pleas. He also contends that his consecutive sentences should be vacated because the trial court's consecutive-sentence findings were not supported by the record. For the reasons that follow, we affirm the trial court but remand for the trial court to issue a nunc pro tunc order incorporating all of the consecutive-sentence findings it made at the sentencing hearing into its sentencing journal entry.

**Factual Background and Procedural History**

{¶ 2} On August 15, 2023, a Cuyahoga County Grand Jury indicted Bates on one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of domestic violence in violation of R.C. 2919.25(A) and one count of intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1). The charges related to a July 15, 2023 incident in which Bates allegedly assaulted, choked and tased his wife. At his arraignment, Bates pled not guilty to all charges. In September 2023, the case was transferred to the trial court's domestic violence docket.

{¶ 3} On October 12, 2023, the parties reached a plea agreement. Bates agreed to plead guilty to one count of domestic violence in violation of R.C. 2919.25(A) and one count of intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1). The parties further agreed that there would be no contact with the victim and that Bates would pay restitution in an amount to be determined. In exchange for Bates' guilty pleas, the remaining count would be nolled.

{¶ 4} At the change-of-plea hearing, the State set forth the terms of the parties' plea agreement on the record. Defense counsel confirmed that the State had accurately set forth the terms of the plea agreement.

{¶ 5} The trial judge proceeded with the plea colloquy. In response to the trial judge's preliminary questions, Bates indicated that he was a United States citizen, was 31 years old, had graduated from high school and that he understood both the charges against him and the plea agreement. Bates confirmed that he was not taking any medication that would impair his ability to understand the proceedings, that he was not under the influence of drugs or alcohol, that no one had made any promises to him in exchange for his guilty pleas — other than what had been stated on the record at the hearing — and that he was satisfied with the representation he had received from defense counsel.

{¶ 6} With respect to the effect of Bates' guilty pleas, the following exchange occurred:

> THE COURT:  Now we'll go over your constitutional rights that you are waiving or giving up today by entering a guilty plea and not taking your case to trial.
>
> Do you understand that you are presumed innocent, but by entering a guilty plea you are admitting to the truth of the facts and your full guilt?
>
> THE DEFENDANT:  Yes.
>
> THE COURT: That's really important. When you say yes here, I hold you to it later, okay?
>
> THE DEFENDANT:  Yes, ma'am.

**{¶ 7}** The trial judge then advised Bates of his constitutional rights and confirmed that he understood the rights he would be waiving by entering guilty pleas. The trial judge identified each of the offenses to which Bates would be pleading guilty and the potential penalties associated with each and confirmed that Bates understood them. The trial judge inquired as to whether Bates understood that there was a no-contact order as a term of his plea agreement. Bates indicated that he understood this. The trial judge explained postrelease control and the potential consequences of violating postrelease control. Bates indicated that he understood. The trial judge asked Bates whether he had any questions "about your rights, the charges, and the penalties, or anything that we've brought up over here today?" Bates responded that he had no questions.

**{¶ 8}** Bates entered his guilty pleas consistent with the plea agreement. The trial court found that Bates "knowingly, voluntarily, with a full understanding of his rights entered his change of plea," accepted his guilty pleas, made findings of guilt and dismissed the remaining count. Defense counsel and the State both indicated that they were satisfied that the trial court had complied with Crim.R. 11. The trial court ordered a presentence-investigation report ("PSI") and scheduled the sentencing hearing.

**{¶ 9}** The PSI includes the following description of the incident giving rise to the charges in this case:[1]

---

[1] The PSI states that the offense summary was derived from records of the Cleveland Police Department.

On 7-16-23, 2023, officers responded to 1148 Main Avenue, Shooter's, on a report of a domestic disturbance. Upon arrival, officers met with victim . . ., who stated that she was employed at Shooter's along with her husband defendant Ernest Bates.

The victim stated that while at Shooter's on 7-15-23, she told the defendant that she was going to go to McCarty's after she was cut from her shift early. The defendant told her, "We're going to have a problem when we get home." The victim advised officers that the defendant regularly "beats" her. When the defendant and victim walked to the parking lot together, the defendant grabbed her arm, causing nail marks in her arms. The defendant told the victim, "I'm going to shoot you again and stab you." They both then went to McCarthy's and drank while waiting for the victim's mother to pick them up.

Once they arrived home, the defendant choked the victim and grabbed her in the back of her head. The defendant then used a Taser on the defendant [sic], causing her to have a seizure due to her epilepsy. The defendant gave the victim one of her Epi-pens and used it on her legs. The victim subsequently left on an RTA bus and went to a women's shelter. The victim stated that she did not call police the night of the assault because the defendant stated, "I will kill you if you make any more police reports."

{¶ 10} On November 13, 2023, the trial court conducted a sentencing hearing. The State played a video clip of the victim's interview with police[2] and read excerpts of numerous calls and text messages Bates had made to the victim from jail in which he, among other things, questioned how he could be charged with felonious assault given that the victim had "no marks, no bruises" on her and she "ain't never been to no doctor," requesting her help in fighting the charges against him and indicating his desire to return to her following his release. It appears that several

---

[2] The video clip was not included in the record forwarded to this court on appeal.

calls or attempted calls were made to the victim's number after Bates entered his guilty pleas.

{¶ 11} The State also described two prior incidents of domestic violence by Bates against the victim that occurred in January 2022 and June 2022. According to the State, in January 2022, Bates had "bum rushed" the victim in her home, "grabbed her by the throat and slammed her into the wall." The victim hit Bates in the crotch to force him to let go, then ran into her bedroom and locked the door. Bates kicked open the door, pointed a handgun at his head, and threated to kill her. When she told Bates she was calling police, Bates responded, "I have a gun. They're going to kill me anyways." Then he left.

{¶ 12} In June 2022, the victim met with Bates to celebrate his birthday. When the celebration was over, she told Bates she was leaving. Bates became angry, "lunged" at her and "began choking her." The victim dropped to her knees in an attempt to get him to release her, but Bates continued choking and punching her while she was on the floor. When Bates went to get a knife, the victim texted her mother for help. Bates saw her texting, threw her phone and punched her in the mouth five times and in the eye once. He took the knife and rubbed it along her leg, then grabbed her neck and began choking her again. He then stood over her and said, "I don't care if you die." At one point during the incident, the victim had a seizure, but she came out of it.

{¶ 13} Defense counsel told the trial court that Bates "wanted the opportunity" to "get sober" and "stop being the kind of person" who appears before

the court. He stated that the text messages Bates sent to the victim from jail were "all prior to Mr. Bates making the decision that he wants to change" and that, since the date of the plea, Bates had had no contact with the victim. He stated that the "track to prison" had not worked for Bates because he goes back to substance abuse and "has yet to be able to fully embrace things that he can change to have a different lifestyle." He indicated that Bates also had some mental health issues, including "adjustment disorder with depressed mood," that had been diagnosed but not properly treated. Defense counsel argued for the imposition of community-control sanctions or a term that would allow for judicial release after 180 days, indicating that the high-risk domestic violence docket had the resources necessary to address Bates' trauma and substance abuse and "offer the victim . . . safety while Mr. Bates remains outside in the community."

{¶ 14} Bates addressed the trial court and stated that he was "not a bad person," that he suffers from "a real bad drug problem and alcohol" and he "just need[s] help." Although the victim was not present at the hearing, he apologized to her and said that he "just want[s] to be sober" for his children and "live [his] life right."

{¶ 15} After considering the record, the oral statements made at the hearing, the PSI, the plea negotiations and the principles and purposes of felony sentencing, the trial court sentenced Bates to an aggregate 5-year prison sentence, i.e., 36 months on the domestic violence count and 24 months on the intimidation of a

crime victim or witness count, to be served consecutively. The trial court also imposed one-to-three years of postrelease control.

{¶ 16} In support of its imposition of consecutive sentences, the trial court made the following findings at the sentencing hearing:

> The Court must make the following findings to support the imposition of a consecutive sentence, that it is necessary to punish the offender and to protect the public from future crime; that this sentence is not disproportionate to the seriousness of the conduct and the danger posed by the defendant; and that two or more of the offenses are part of one or more course of conduct; and that the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct.
>
> The Court is making the following finding: That your criminal history, as it relates to domestic violence, demonstrates that consecutive sentences are necessary to protect the public.

{¶ 17} With respect to Bates' conduct, the trial court specifically observed:

> [T]his docket was to help prevent future intimate partner abuse. But there are no guarantees that you'll be accepted on the probation docket. . . . I don't know at this stage that the probation docket would be of any service to you.
>
> Reading these text messages gives me a lot of incite [sic] into the type of abuser you are. There's a lot of manipulation and control and a lot of us against the world mentality that has probably worked for you in your relationships, but the facts in this case and the facts recited about your prior case tell me that you — it's almost like you take pleasure in abusing your wife. Your planning and your thinking, like, how can I make this as uncomfortable as possible for her? How can I instill the most fear in her? By letting her know you do this, when you get home it's going to be waiting for you. Knowing that the behavior is so abhorrent that you don't want your fellow employees to see that you dig your nails in her arm just to remind her — just to remind her of what's going to come next.
>
> I haven't seen this behavior before in somebody that I placed on my probation docket.

{¶ 18} The trial court set forth its consecutive-sentence findings in its sentencing judgment entry as follows:

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

{¶ 19} Bates appealed, raising the following two assignments of error for review:

I.      The trial court erred when it accepted Bates' guilty plea when a plea of not guilty had been previously entered and remained pending having not been withdrawn.

II.     The facts in the record do not support the trial court's imposition of consecutive sentences.

**Law and Analysis**

**Failure to Formally Withdraw Prior Not Guilty Pleas**

{¶ 20} In his first assignment of error, Bates contends that because he never formally withdrew his prior not guilty pleas prior to entering his guilty pleas, his guilty pleas were invalid, and the trial court, therefore, erred in accepting his guilty pleas. We disagree.

{¶ 21} Bates asserts: "When a not guilty plea is not expressly withdrawn by the defendant the trial court lacks the jurisdiction/ability to accept a guilty plea to

the charged offenses and enter a finding of guilt against the defendant. Bates' guilty pleas are invalid and void and must be vacated/set aside." In support of his assertion, Bates cites five cases: *State v. Baker*, 2008-Ohio-3330; *State v. Hardman*, 2016-Ohio-498 (8th Dist.); *State v. McQueeny*, 2002-Ohio-3731 (12th Dist.); *State v. Evola*, 102 Ohio App. 419 (8th Dist. 1955); and *State v. Croop*, 1993 Ohio App. LEXIS 2574 (5th Dist. May 10, 1993). However, none of those cases suggests that a trial court "lacks the jurisdiction . . . to accept," or cannot otherwise accept, a guilty plea without a defendant first expressly stating that he was withdrawing his previously entered not guilty plea.

{¶ 22} *Baker*, 2008-Ohio-3330, addressed what information is required in a judgment of conviction for it to constitute a final, appealable order. *Id.* at syllabus. Although the Ohio Supreme Court stated in that case that "if a defendant maintains a not guilty plea throughout the litigation, the only way that this plea is overridden is through proof beyond a reasonable doubt leading to a guilty verdict during a jury trial or a finding of guilt by the court after a bench trial," here, Bates did not "maintain[] a not guilty plea throughout the litigation." *Id.* at ¶ 12. He entered guilty pleas to two offenses as part of a negotiated plea agreement. The trial court, thereafter, accepted Bates' guilty pleas, found him guilty of the offenses at issue and set forth those guilty findings in its judgment of conviction. There is nothing in *Baker* that requires a defendant to formally withdraw a previously entered not guilty plea prior to changing his plea and entering a guilty plea.

{¶ 23} *Hardman*, 2016-Ohio-498 (8th Dist.), addressed a criminal defendant's right to self-representation and standby counsel, whether a defendant's not guilty plea preserves a sufficiency challenge (or whether the defendant needed to make a Crim.R. 29 motion for judgment of acquittal) and whether there was sufficient evidence to support the defendant's conviction for unlawful sexual conduct with a minor — none of which is at issue here.

{¶ 24} *McQueeny*, 2002-Ohio-3731 (12th Dist.), involved a defendant's initial plea of not guilty by reason of insanity followed by a guilty plea. In that case, the Twelfth District held that a valid guilty plea is an implied admission of sanity and that when a defendant enters a plea of not guilty by reason of insanity and later enters a plea of guilty without formally withdrawing the not guilty by reason of insanity plea, the defendant waives any argument pertaining to the insanity defense. *Id.* at ¶ 38. The court held that because the defendant's guilty plea was entered knowingly, intelligently and voluntarily, the trial court did not err in accepting his guilty plea even though the defendant had not formally withdrawn his not guilty by reason of insanity plea. *Id.* at ¶ 39-40.

{¶ 25} In *Evola*, 102 Ohio App. 419 (8th Dist. 1955), the trial court permitted the defendants to withdraw their guilty pleas and enter not guilty pleas. The trial court, then, on its own motion and without the consent of the defendants, reinstated their guilty pleas. *Id.* at 419-420. This court held that the trial court's actions violated the defendants' right to due process and reversed the trial court: "After defendants have been granted the privilege of withdrawing their pleas of guilty and

of re-entering pleas of not guilty, and such pleas of not guilty have been journalized, a court is without authority to vacate and re-establish prior pleas of guilty, without the consent of the defendants made in open court." *Id.* at 420. That is not the situation here.

{¶ 26} *Croop*, 1993 Ohio App. LEXIS 2574, involved the effect of a pending not guilty plea on a motion for treatment-in-lieu-of conviction under former R.C. 2951.041. Once again, that is not the situation here.

{¶ 27} The record in this case fully supports the trial court's decision to accept Bates' guilty pleas as being knowingly, intelligently and voluntarily entered. The trial judge expressly advised Bates during the plea colloquy regarding the effect of his guilty pleas — i.e., that although he was "presumed innocent," by entering a guilty plea he was "admitting to the truth of the facts" and his "full guilt" — and confirmed that Bates understood this, emphasizing the significance of the proceedings: "That's really important. When you say yes here, I hold you to it later." Nothing in the record suggests that Bates was not competent or that he did not understand or appreciate the consequences of pleading guilty. Bates does not claim that his guilty pleas were not knowingly, intelligently and voluntarily entered, and he has cited no legal authority that requires a defendant to formally withdraw a previously entered not guilty plea prior to entering a valid guilty plea. A person cannot simultaneously plead both guilty and not guilty to a single offense. By knowingly, intelligently and voluntarily pleading guilty to the charges at issue in connection with his negotiated plea agreement, Bates impliedly — if not expressly —

withdrew his previously entered not guilty pleas.[3] Thus, the trial court did not err in accepting his guilty pleas. We overrule Bates' first assignment of error.

**Imposition of Consecutive Sentences**

{¶ 28} In his second assignment of error, Bates challenges the imposition of consecutive sentences.

{¶ 29} Under Ohio's sentencing statutes, there is a presumption that a defendant's multiple prison sentences will be served concurrently, unless certain circumstances, not applicable in this case, apply or the trial court makes the required findings supporting the imposition of consecutive sentences under R.C. 2929.14(C)(4). R.C. 2929.41(A); *State v. Jones*, 2024-Ohio-1083, ¶ 11; *State v. Reindl*, 2021-Ohio-2586, ¶ 14 (8th Dist.); *State v. Gohagan*, 2019-Ohio-4070, ¶ 28 (8th Dist.). To impose consecutive sentences, the trial court must find that (1) consecutive sentences are "necessary to protect the public from future crime or to

---

[3] As noted above, even a plea of not guilty by reason of insanity need not be formally withdrawn before a trial court can properly accept a defendant's guilty pleas. *See, e.g., State v. Stevens*, 2022-Ohio-2, ¶ 23 (7th Dist.) (a defendant "need not formally withdraw" a not guilty by reason of insanity plea; "the defense is withdrawn 'by entering a guilty or no-contest plea, by failing to pursue the defense, or by pursuing a new defense at trial'"), quoting *State v. Martin*, 2016-Ohio-989, ¶ 36-38 (3d Dist.) (rejecting claim that trial court committed reversible error in accepting defendant's guilty pleas where defendant did not formally withdraw his not guilty by reason of insanity pleas prior to entering his guilty pleas and concluding that defendant's not guilty by reason of insanity pleas "were formally withdrawn when he unequivocally entered guilty pleas" to four amended counts of rape), citing *State v. Harris*, 2015-Ohio-166, ¶ 18 ("Precedent demonstrates that a defendant can withdraw [a not guilty by reason of insanity] defense formally, by entering a guilty or no-contest plea, by failing to pursue the defense, or by pursuing a new defense at trial."); *McQueeney*, 2002-Ohio-3731, at ¶ 35-40 (12th Dist.) (trial court did not err by accepting a defendant's valid guilty plea even though his not guilty by reason of insanity plea had not been formally withdrawn).

punish the offender," (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and (3) at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). The trial court must make each finding required under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 2014-Ohio-3177, syllabus.

{¶ 30} To "make" the requisite findings under the statute, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999). When imposing consecutive sentences, the trial court is not required to state reasons supporting its findings, nor is it required to give a "talismanic incantation of the words of the statute." *Jones*, 2024-Ohio-1083, at ¶ 11, quoting *Bonnell* at ¶ 37. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and

can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.  When considering whether the trial court has made the requisite findings, an appellate court must view the trial court's statements on the record "in their entirety." *See, e.g., State v. Blevins*, 2017-Ohio-4444, ¶ 21, 23, 25 (8th Dist.).

{¶ 31}    As the Ohio Supreme Court recently stated in *Jones*:

R.C. 2953.08(G) instructs appellate courts reviewing the imposition of consecutive sentences, as follows:

(2) The court hearing an appeal under [R.C. 2953.08(A), (B), or (C)] shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)];

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(F) requires an appellate court to review the entire trial-court record, including any oral or written statements made to or by the trial court at the sentencing hearing, and any presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed. R.C. 2953.08(F)(1) through (4).

R.C. 2953.08(G) permits an appellate court to increase, reduce, otherwise modify, or vacate a sentence only "if it clearly and convincingly finds" that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law.  R.C. 2953.08(G)(2); *see also State v. Marcum*, 146 Ohio St.3d 516, 2016-

Ohio-1002, 59 N.E.3d 1231, ¶ 22. The standard to be applied is the standard set forth in the statute: an appellate court has the authority to increase, reduce, otherwise modify, or vacate a sentence only after it has reviewed the entire trial-court record and "clearly and convincingly f[ound] either . . . [t]hat the record does not support the sentencing court's findings under [certain statutes]" or "[t]hat the sentence is otherwise contrary to law," R.C. 2953.08(G)(2).

(Brackets in original.) *Jones*, 2024-Ohio-1083, at ¶ 12-13.

{¶ 32} Thus, a defendant can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the trial court failed to make the findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *Reindl,* 2021-Ohio-2586, at ¶ 13 (8th Dist.). Second, the defendant can argue that the record "clearly and convincingly" does not support the trial court's findings made pursuant to R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Reindl* at ¶ 13. A matter is "clear and convincing" if it "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 33} In this case, Bates concedes that the trial court made all of the required findings under R.C. 2929.14(C)(4). He asserts that his convictions should, nevertheless, be vacated because the record clearly and convincingly does not support the trial court's "course of conduct" finding under R.C. 2929.14(C)(4)(b) or its findings that (1) consecutive service is necessary to protect the public from future crime or to punish Bates and (2) consecutive sentences are not disproportionate to the seriousness of Bates' conduct and to the danger he poses to the public.

{¶ 34} The State does not address the specific arguments Bates makes in support of his second assignment of error or otherwise discuss the extent to which there is support in the record for the trial court's consecutive-sentence findings. It simply states: "The record reflects that the trial court made the required fin[d]ings and specifically found that appellant's 'criminal history, as it relates to domestic violence, demonstrates that consecutive sentences are necessary to protect the public.'"

{¶ 35} Following a thorough review of the record, we cannot say that the record clearly and convincingly does not support the requisite findings to support the trial court's imposition of consecutive sentences.

{¶ 36} We turn first to the trial court's finding under R.C. 2929.14(C)(4)(b) — i.e., that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Bates' conduct.

{¶ 37} Bates asserts that the record does not support a finding that the domestic violence and intimidation of a crime victim or witness offenses were committed as "one or more courses of conduct" because (1) the transcript from the sentencing hearing "does not set forth what conduct is alleged to have occurred to support the conviction of intimidation of a crime victim or witness," (2) the indictment simply indicates that "the underlying offense is domestic violence"

without "distinguish[ing] what additional conduct . . . might support this charge," (3) the Cleveland Police Department's case information form "merely sets forth that Bates was alleged to have caused physical harm to . . . J.F. during a verbal argument" and (4) Bates' communications with J.F. while in jail post-dated the indictment and were "not applicable to the charge."

{¶ 38} A "course of conduct" exists for purposes of R.C. 2929.14(C)(4)(b) where two offenses share some connection, common scheme, pattern or psychological thread that ties them together. *See, e.g., State v. Evans*, 2023-Ohio-3656, ¶ 20 (2d Dist.); *State v. Simpson*, 2023-Ohio-3207, ¶ 31 (3d Dist.). A course of conduct may involve related acts tied by factual links such as time, location, similar motivation, cause of injury or other factors. *See, e.g., State v. Colon*, 2022-Ohio-2137, ¶ 14-15 (8th Dist.); *Simpson* at ¶ 31; *Evans* at ¶ 20.

{¶ 39} As noted above, at the sentencing hearing, the State played a video clip of the victim's interview with police. Because that video clip was not included in the record forwarded to this court on appeal, we do not know what information might have been provided in that video clip to support the trial court's findings. However, the PSI indicates that the victim told police that she did not call police that night after Bates assaulted her but rather, went to a women's shelter because Bates had threatened to kill her if made "any more police reports." This supports the trial court's finding that the intimidation offense was part of the same course of conduct as the domestic violence offense.

{¶ 40} The information presented at the sentencing hearing highlighted the brutal nature of Bates' assault against the victim. After they were back at home, Bates choked her and "grabbed her in the back of her head," then tased her, causing her to have a seizure. In sentencing Bates, the trial court expressed serious concern regarding not only the physical harm Bates had inflicted on the victim but also the level of "manipulation and control" Bates had exercised over her — e.g., his "planning" and "thinking," "how can I make this as uncomfortable as possible for her," "[h]ow can I instill the most fear in her," "almost like you take pleasure in abusing your wife" — conduct that the trial judge stated she had never seen before in someone she had placed on her probation docket. Given the seriousness of Bates' conduct, the connection between the offenses and the harm caused to the victim, the record contains support for the trial court's finding under R.C. 2929.14(C)(4)(b). Accordingly, we cannot say that the record clearly and convincingly does not support the trial court's finding under R.C. 2929.14(C)(4)(b).

{¶ 41} We also note that, at the sentencing hearing, the trial court made a finding under R.C. 2929.14(C)(4)(c) as well as a finding under R.C. 2929.14(C)(4)(b) — although it did not incorporate its finding under R.C. 2929.14(C)(4)(c) into its sentencing journal entry.

{¶ 42} Only one of the three findings under R.C. 2929.14(C)(4)(a)-(c) must be made to support the imposition of consecutive sentences. If the trial court properly made a finding under R.C. 2929.14(C)(4)(c), it was not also required to make a finding under R.C. 2929.14(C)(4)(b). *See, e.g., State v. Mitchell*, 2022-Ohio-

3818, ¶ 11 (8th Dist.); *State v. Black*, 2020-Ohio-188, ¶ 11 (8th Dist.); *State v. Nave*, 2019-Ohio-348, ¶ 6-7 (8th Dist.). Even if we agreed with Bates that the record did not clearly and convincingly support the trial court's finding under R.C. 2929.14(C)(4)(b), the trial court's additional finding under R.C. 2929.14(C)(4)(c) satisfied the consecutive sentencing requirements. *Black* at ¶ 11; *see also Mitchell* at ¶ 13 (where appellant did not challenge the factual underpinnings of the alternative finding the trial court made in the case under R.C. 2929.14(C)(4)(b), the court could not find error in the imposition of consecutive sentences), citing App.R. 16(A)(7).

{¶ 43} In his appellate brief, Bates acknowledges that "[t]he trial court did indicate that Bates' criminal history of domestic violence demonstrated the need for consecutive sentences to protect the public," but he does not specifically challenge that finding or otherwise show that that finding is clearly and convincingly unsupported by the record.

{¶ 44} The record reveals a pattern of escalating abuse by Bates against the victim. This case involved the third reported incident in which Bates had physically assaulted her within an approximately 18-month period. In prior incidents, Bates had beaten, choked and threatened the victim while possessing a gun or knife. In the incident at issue here, Bates choked and then tased the victim causing her to have a seizure.

{¶ 45} The record reflects that in March 2022, Bates pled guilty to aggravated menacing in connection with the January 2022 incident for which he

received a 50-day jail sentence. In November 2022, Bates pled guilty to domestic violence in connection with the June 2022 incident for which he received a 12-month prison sentence. The record reflects that the lesser sentences Bates had received had not been effective in modifying his conduct. In texts and calls to the victim while he was in jail pending resolution of the charges at issue, Bates continued his efforts to control and manipulate her.

{¶ 46} Even if Bates was violent only towards this victim, his history of criminal conduct towards her did not preclude findings by the trial court that consecutive sentences were necessary to protect the public from future crime or to punish Bates, that consecutive sentences were not disproportionate to the seriousness of Bates' conduct and to the danger he poses to the public or that Bates' history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him. *See, e.g., State v. Stoker*, 2021-Ohio-1887, ¶ 26 (8th Dist.) (rejecting defendant's arguments that the record did not support the imposition of consecutive sentences because he was violent only toward a single victim and she did not want him to go to prison). After a thorough review of the record, we are not left with the "firm belief or conviction" that the record did not support the trial court's consecutive-sentence findings under R.C. 2929.14(C)(4)(b) and (c), or its findings that (1) consecutive service is necessary to protect the public from future crime or to punish Bates and (2) consecutive sentences are not disproportionate to the seriousness of Bates' conduct and to the danger he poses to the public.

{¶ 47} The trial court's finding under R.C. 2929.14(C)(4)(c), unlike the trial court's other consecutive-sentence findings, was not set forth in the trial court's November 13, 2023 sentencing journal entry. However, it is well established that the trial court's "inadvertent failure to incorporate the statutory [consecutive-sentence] findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Bonnell*, 2014-Ohio-3177, at ¶ 30.

{¶ 48} Accordingly, we overrule Bates' second assignment of error and affirm his consecutive sentences but remand for the trial court to issue a nunc pro tunc order incorporating all of the consecutive-sentence findings it made at the sentencing hearing into its November 13, 2023 sentencing journal entry, including its finding under R.C. 2929.14(C)(4)(c).

{¶ 49} Judgment affirmed and remanded.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds that there were reasonable grounds for these appeals.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for imposing and properly journalizing the gun forfeiture and for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EMANUELLA D. GROVES, J., CONCUR